IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



Pro se
Edna M. Tubbs

No. 1:06cv834 LG RHW

Plaintiff,

v.

Northrop Grumman Ship Systems, Inc.,

Defendant.

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF AND
DAMAGES

(Civil Rights-Employment)

Jury Trial Demanded

## PRELIMINARY STATEMENT

1. This action seeks injunctive and declaratory relief to prevent continuing, system and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment. In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

## JURISDICTION

2. This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act 1964, as amended, 42 U.S.C. sections 2000e et seq. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. section 1981 ("1981. Jurisdiction of this Court is invoked pursuant to 42 U.S.C section 2000e-5(f), 28 U.S.C. sections 1343 (3)&(4); 28 U.S.C. section 1331 and 28 U.S.C.

section 1337. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. sections 2201 & 2202

## PARTIES

3. Edna M. Tubbs is a Black employee of NGSS who has been employed by NGSS for over 31 years.

4. NORTHROP GRUMMAN SHIP SYSTEMS INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian. It is located in Pascagoula, Mississippi. It is an employer for purposes of Title VII. On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5. NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended. NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit: an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7. Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8. On or about December 20, 2000 the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

## PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT

10. An initial complaint was filed in the United States District Court for the Southern District 0f Mississippi on March 21, 2001, in with eleven ( II ) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race. The case was assigned a case number of 1:01-CV-111(G)-(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

   a) Dismissal of the class action allegations seeking compensatory and punitive damages;
   b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 19, 42 U.S.C. section 2000d, et seq.;
   c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;
   d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;
   e) Dismissal of defendant LITTON INDUSTRIES; and

   f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, inter alia, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-CV-111 (LG)(RHW).

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

16. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS. NGSS has intentionally implemented these policies and practices, among other ways, as follows:

   a) By failing to treat Blacks on an equal basis with Whites.

   b) By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

   c) By using evaluation procedures in the consideration of employees for promotions

    that discriminate against or illegally exclude Black employees from consideration.

d) By failing to provide Black employees with equal opportunities for advancement within the company because of their race. Black employees are denied promotions despite qualifications and years on the job. It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

e) By maintaining a double standard in the granting of promotions to White employees vis a vis Black employees. Practices including cronyism, nepotism, word-of-mouth recruitment failure to post or advertise employment opportunities, and or the placement of White employees in acting position have inured to the determent of Black employees historically.

f) By restricting access to employment opportunities for Black employees and maintaining workforce in which its supervisory and management personnel has been and continues to predominately White.

g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

h) By demoting Black employees at a disproportionate rate as compared to White employees.

i) By retaliating against Black employees after they have complained or challenged, in way the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

k)  By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

l)  By instituting and allowing the continuance of a racially hostile work environment for Black employees.

17) This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sections 2000e et seq., and the Civil Rights Act 1866, as amended, 42 U.S.C. section 1981.

18) NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF

## TITLE VII AND ~ 1981

19) Plaintiff incorporates paragraphs 1 through 18, as though fully set forth herein

20) Plaintiff has worked for 31 years in one or more of the department at NGSS utilizing a position entitle "leaderman" or "half-hat." Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or half-hat" at NGSS exit. Plaintiff was asked to assume the position of " leaderman" in 1989.

21) Plaintiff applied to be promoted to the position of Supervisor, in the labor department a position in which plaintiff was qualified, but for which she was not selected because of her race. Plaintiff was qualified for the position based on her 14 years at the shipyard, her seniority, and knowledge of the job.

22) Plaintiff has applied for Labor Supervisor on numerous occasions while the position was Being filled at the same time. Plaintiff was qualified for the positions for which she applied, but She was not selected because of her race, the means used to determine that plaintiff would not be

Selected for a position, for which she was qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

23) In or about the late 1990s, plaintiff was asked to except the position of Supervisor in the labor department. A year later plaintiff was demoted at times during which similarly situated White employees was being promoted for the same position .The decision to demote plaintiff in Spite of her seniority was and is a violation of Title VII and section 1981.

24) Plaintiff has observed both that Black employees are not promoted in spite of their qualifications and seniority as well as the lack of qualification of White employees who have been promoted, and therefore, plaintiff has not applied for promotive positions for which was qualified, and plaintiff has never been selected for promotion to any such position, for which she was qualified, have been validated pursuant to the Uniform Guidelines on Employee Section Procedures.

25) Plaintiff made her Supervisor aware that she desired to be chosen to participate in sea trials and/ or off site trips. However, she has never been selected to participate in sea trial and/or off site in spite of being qualified to be chosen, while he similarly situated White colleagues have overwhelmingly been selected to do so.

26) Plaintiff has been subject to racial tracking that assigns Black employees at NGSS at a disproportion rate as compared to White employees to the most undesirable, dirtiest and dangerous employment environments in the workplace. The employment environments to which plaintiff as been assigned include, but not limited to, the following instances:

    a) Plaintiff and other Black insulators have been forced to work situations Such as the Engine Rooms, Amrs, Passageways, Sonar Dome climbing down stair with a tools bag, paint.

   b) Plaintiff has had to crawl on hands and knees, stomach in confined tight spaces.

   c) For several months during the year 1998, plaintiff was required to work on the Venezuelan Armada's LUPO class frigates while similarly situated White employees were either not assigned such work or would be allowed to remove themselves from that assignment. Plaintiff was forced to work amid raw sewage and hepatitis contamination on the LUPO class frigates.

27) Plaintiff has observed both that Black employee are not promoted in spite of their qualification and seniority as well as the lack of qualifications or White employees who have been promoted, and, therefore plaintiff has not applied for certain promotive position for which she was qualified. Plaintiff has also observed that the availability of position was not always publicized, and plaintiff therefore has not applied for certain position. Such positions, because they are not posted, were fill before plaintiff even has the opportunity to apply. The means used to determine that plaintiff would not be a position, for which she was and is qualified, have been validated to the Uniform Guidelines on Employee Selection procedures.

28) Plaintiff has been subject to disparate treatment with regard to the imposition of discipline for actual or alleged transgressions for which plaintiff is informed and believes similarly situated White employees are not discipline.

29) Plaintiff has made her supervisor(s) aware that she desired to receive certain supervisory training. However, he was denied training in spite of being qualified, while her similarly situated White colleagues have received such training. Furthermore, the selection process for obtaining has never been validated pursuant to the Uniform Guidelines on Employee

selection Procedures.

30) Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS. NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS. Such exposure has occurred in at least the following instances:

 a) Plaintiff has seen offensive racially derogatory graffiti on the restroom walls on both banks.
 b) Plaintiff has seen the words "nigger" written on the restroom walls through the late 1990s.

31) Plaintiff has been subjected to a hostile work environment based on plaintiff's race plaintiff has been exposed to nooses at NGSS. NGSS knows or should have known about the presence of nooses, both actual and depicted in drawings, at its workplace, but has failed to take steps to prevent or correct promptly its occur.

32) Plaintiff has been subjected to a hostile work environment based on plaintiffs race. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 19 through 31, incorporated as though fully set forth herein.

33) Plaintiff has been subjected to a hostile work environment based on plaintiffs race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings,

depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

34) Plaintiff has been subjected to a hostile work environment based on plaintiffs race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

35) The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and section 1981.

36) NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace. NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding same. NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 32 through 35, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

37) Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived or career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS discriminatory employment practices.

38) No plain, adequate, or complete remedy at law is available to plaintiff. Monetary relief cannot adequately compensate the loss of promotional opportunities, experience, and careers

with NGSS. Similarly, monetary relief cannot adequately compensate the continued subjection to a racially hostile work environment.

39) Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

40) Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 39 and further alleges for a first claim for relief as follows:

41) Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS'S unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sections 2000e et seq.

## SECOND CLAIM FOR RELIEF

42) Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 41 and further alleges for a second claim for relief as follows:

43) Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. section 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNIIIVE DAMAGES

44) Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate

result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. section 1981a.

45) Similarly defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

## PRAYER

WHEREFORE, plaintiff prays that this Court:

a) Declare pursuant to 28 U.S.C. sections 2201 & 2202 the employment practices set forth in paragraphs 19 through 36 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sections 2000e et seq. and the Civil Rights Acts of 1866, as amended, 42 U.S.C. section 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. section 2000e et seq. and the Civil Rights Act of 1866, as" amended, 42 U.S.C. section 1981.

c) Issue a preliminary and permanent injunction enjoining NGSS, its agents, successors, employees, attorneys, and those acting in concert with it from engaging in each of the unlawful practices set forth in paragraphs 16 through 34 and from continuing other practices found to be in violation of applicable law;

d) Direct NGSS to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

e) Enter a permanent mandatory injunction requiring that NGSS adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. section 2000e et seq. and the Civil Rights Act of 1866, as amended, 42 U.S.C. section 1981;

f) Require that NGSS submit a comprehensive plan detailing how it plans to ensure fair and equitable job advancement opportunities for Black employees. The plan should also outline steps to be taken to ensure that jobs available remain open until the posting period has expired;

g) Require that NGSS institute a policy that affords equal opportunities for training and development. The policy should include the requirement that such training opportunities must be announced to the entire workforce as well as a procedure consisting of a rotation scheme and other procedures to ensure that training for job advancement is afforded to all those who are interested;

h) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

i) Grant such punitive, general, and special damages as proved at trial;

j) Award plaintiff the costs and litigation expenses of this action and reasonable attorney's fee as provided for in section 7069(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. section 222e-5(k), and the Civil Rights Attorneys fee award Act of 1976, as amended, 42 U.S.C. section 1988; and

k) Grant such other and further relief as may be just and proper,

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

*Edna Tubbs*
Edna M. Tubbs

Dated: October 19, 2006

Pro se

*Edna Tubbs*

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS39552